The opinion of the court was made known at an adjourned term held in Hampden county, in January 1843.
Shaw, C. J.
This is a case in equity, in which the Western Rail Road Corporation seek the specific performance of a contract made by them with the defendant, previously to the definitive location of their road, by which he stipulated to convey to them in fee, on certain conditions, as much of his land as would be necessary to their rail road, at rates therein specified. The bill sets forth the agreement by which he stipulated to receive compensation at certain specified rates per acre, for the different kinds of land which the rail road might traverse, and a provisional allowance for fencing. Proof was offered of the execution of the contract, as also of the final location of the road, passing, to a considerable extent, over the defendant’s land, as also of the tender of the money, and demand of a deed conforming to the agreement.
The ground of defence is, that the defendant was deceived or mistaken, and led to execute an agreement different from that which he supposed he was executing; that he did not understand where the line was, as described in the agreement, but supposed the line contemplated to be adopted to be a different line from the one, over which the rail road was in fact located, *352 and one, the adoption of which would have done him less damage.
This is mainly a question of fact upon the evidence, and has been so argued by the counsel, and considered by the court.
The court, in the main; accede to the principles of law, stated by the defendant’s counsel, as those upon which the defence is placed. In an application to a court of equity for a specific performance, a decree for such performance is not a matter of strict right, on proof of the agreement, but may be rebutted by showing that to require such an execution would be inequitable. A defendant, therefore, may not only show that the agreement is void, by proof of fraud or duress, which would avoid it at law ; but he may also show that, without any gross laches of his own, he was led into a mistake, by any uncertainty or obscurity in the descriptive part of the agreement, by which he, in fact, mistook one line or one monument for another, though not misled by any representation of the other party, so that the agreement applied to a different subject from that which he understood at the time; or that the bargain was hard, unequal and oppressive, and would operate in a manner different from that which was in the contemplation of the parties, when it was executed. In either of these cases, equity will refuse to interfere, and will leave the claimant to his remedy at law.
But, to establish either of these grounds of defence, the burden of proof is plainly on the defendant; and to bring his case within the former, he must show such mistake on his part, or some misrepresentation on that of the complainant, or his agent, seeking to enforce the performance of the contract. In doing this, it is not competent for the defendant merely to aver that he was under a mistake as to the description of the route, oi other subject matter of agreement, or, when the description was precise and clear, that he signed the agreement without reading or hearing it, where he had the means offered him of doing so. He must show an honest mistake not imputable to his own gross negligence.
One other consideration, which we think applicable to such a case, is this; that where a man has stipulated, for a certain con *353 sideration, to permit a company to construct a road’ over his land, by any one of two or more routes, at their option, it is not competent for him afterwards to resist the performance of his agreement, by showing that he was induced to believe, either by his own notions, or by the representation of others, as to the preference of one over the other, that a particular one was adopted, which he did not expect; nor would this result be affected, if the other party, or their agents, had made such representation, as to the probability of their adopting one route in preference to the other, or of the relative advantages of each. Having, by the terms of the contract, stipulated for the right to adopt either, and stipulated to pay a consideration for such right of choice, e 11 representations respecting the probability of their adopting one rather than the other, must be considered as merged in the agreement; and if, in fact, the one route would cause more damage, and the land owner intends to claim larger compensation in one case than in the other, the alternative must be stipulated for in the agreement itself.
One objection was taken to this agreement, not, we presume, to its legality, but to the fitness and propriety of enforcing its performance in equity; which is, that it was not mutual, because, although the defendant bound himself to convey his land at certain prices, the company did not bind themselves to pay him those prices.
In the first place, the contract, being under seal, and made upon a nominal pecuniary consideration, was binding in law, without other consideration. Again ; it was conditional; it was the grant of a license to enter upon his land, and lay out their rail road over it, at their option. If they should not take his land, he would be entitled to no further compensation. But further; as this was a grant to them, on condition, of a license, with certain rights, interests and easements in the land, there would be good ground to hold, that if they accepted and acted upon this grant, they were bound by the conditions, and that an action would lie for the money. As where a grant is made by deed poll, the grantee paying money, or performing any other condition, an accep'ance of the grant binds the grantee to *354 a performance of the condition, for which assumpsit will lie. Goodwin v. Gilbert, 9 Mass. 510.
But a more decisive, and perhaps more satisfactory answer is, vhat the direct stipulation of the defendant was to execute a qualified, defeasible conveyance of the land to the company, on certain payments being made. The payment was a condition precedent, and the company could obtain no benefit from the agreement, without first paying or tendering the stipulated rates of compensation. This was an ample security for the defendant, binding the company to a compliance with the agreement on their part, and renders the agreement reciprocal; and the condition subsequent, to be inserted in the deed to be made oy him, rendering it void if the rail road over his land should be discontinued, was a sufficient guaranty that the grant would not continue when the land should cease to be appropriated to that public use.
That such an agreement, if fairly made, is a legal contract, and that it affords a proper ground for a decree for specific perform anee in equity, we can have no doubt.
In executing public works, where private property must be taken for public use, the cost of the work, as affected by the compensations thus to be paid, enters largely into the consideration, both of the legislature, and of those agents and commissioners, who may be intrusted with the consideration of the subject, in determining, first, whether the work shall be undertaken at all, and, if so, then what route shall be selected. Such a decision must be influenced mainly by a comparison of the expense with the utility of several proposed routes. If it is to pass over lands covered with dwelling-houses, or otherwise of great value and cost, it would be a strong inducement to the adoption of a less expensive route, or operate as a decisive objection to the enterprise. But the owners themselves know the value of the property, and the prices at which they are willing to part with it, for the accomplishment of the proposed object taking into consideration the advantage, if any, which it may confer on their other property. A previous contract, stipulating provisionally for a grant of the land, or of a right of *355 way over it, on certain specified terms, is well calculated to give authentic information, to prevent all mistakes and misunderstanding arising from mere verbal propositions and representations, and to seem i the rights of all parties.
Taking f ich a contract, when fairly made, on good considera-ron, without fraud or duress, to be perfectly legal and equitable, a specific performance, by a decree in equity, is plainly the only adequate remedy that such a public corporation could have. The use of the land, when the location is fixed, is absolutely essential to their franchise, and a compensation in damages, in an action at law, would afford them no relief. Indeed, the right to the use of the land, for a public purpose, is secured by the constitution and laws of the land, independently of any contract; and by their act of incorporation vested in the company, for the use of the public; and if a specific performance of the agreement, on the part of the land owner, were not given in equity, and the result were that he should obtain his damages in the mode pointed out by the statute, if they should exceed the amount stipulated for in the agreement, the company, in an action at law, on the contract, would recover back the same amount, in damages. If, therefore, the agreement is a valid and equitable one, this remedy, by specific performance, ought to be allowed, to avoid circuity of action.
With these considerations in view, the court have considered the subject as one of fact upon the evidence. There is considerable conflict of evidence, especially as to what took place at the defendant’s house, when the agreement was executed. Without stating the evidence at large, which is quite voluminous, the conclusions which we have come to, are these: That there was no fraud or false representation on the part of the company’s agent; that the route, described in the agreement, was clearly and definitely stated as the west line, or Child’s line, and was known to, or might easily have been known to, Babcock, the defendant, and was at least as well known to him as to the agent; that this was the line ultimately adopted by the company as the route of their road; that the agreement was read over to the defendant, before he executed it, with an honest purpose to enable him fully to understand it; that there was no mistake on *356 the part of the defendant, as to the route expresse d in the agreement; and that, if he was induced, from any cause, to suppose that the company would not pursue the route they did, but adopt another, which he supposed would be more benefh tal to them, and better for him, it is not a mistake into which he was led by the company’s agent, nor one which affects this agreement.
And the result of the opinion of the court is, that the agre» ment is valid in law, that the defendant has shown no sufficient grounds to excuse him from a performance in a court of equity, and therefore that the complainants are entitled to a decree for such specific performance.